# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS
No. 15-1166V
Filed: March 23, 2023
UNPUBLISHED

| | |
|---|---|
| RICHARD C. ZUG and LAURA C. ZUG on behalf of TEZ,<br><br>Petitioners,<br>v.<br><br>SECRETARY OF HEALTH AND HUMAN SERVICES,<br><br>Respondent. | Special Master Horner<br><br>Attorneys' Fees and Costs |

*John Alan Jones*, Martin & Jones, PLLC, Raleigh, NC, for petitioner.
*Traci R. Patton*, U.S. Department of Justice, Washington, DC, for respondent.

## DECISION AWARDING ATTORNEYS' FEES AND COSTS[1]

After this case was resolved by stipulation, petitioners moved for an award of attorneys' fees and costs on March 3, 2022. (ECF Nos. 87-89.) Petitioners seek $412,111.60 in attorneys' fees and $52,954.27 in attorneys' costs for a total of $465,065.87. (ECF No. 89, p. 1.) Additionally, petitioners seek $48,665.07 in guardianship expenses. (ECF No. 87.) Thus, the overall total sought is $513,730.94. For the reasons discussed below, I award petitioners $392,744.66.

### I. Procedural History

On October 9, 2015, petitioners filed this claim, under the National Childhood Vaccine Injury Act, 42 U.S.C. § 300aa-10-34 (2012), alleging that their child suffered severe gastroparesis cause-in-fact by his diphtheria tetanus and acellular pertussis ("DTaP") vaccination. (ECF No. 1.) On July 11, 2016, respondent filed a Rule 4 report

---
[1] Because this decision contains a reasoned explanation for the special master's action in this case, it will be posted on the United States Court of Federal Claims' website in accordance with the E-Government Act of 2002. *See* 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services). **This means the decision will be available to anyone with access to the Internet.** In accordance with Vaccine Rule 18(b), petitioners have 14 days to identify and move to redact medical or other information the disclosure of which would constitute an unwarranted invasion of privacy. If the special master, upon review, agrees that the identified material fits within this definition, it will be redacted from public access.

recommending against compensation. (ECF No. 17.) However, after petitioners filed an expert opinion by pediatric gastroenterologist Steven Lichtman, M.D., the presiding special master ordered petitioners to provide a demand to respondent. (ECF No. 25.) As of January 16, 2016, respondent confirmed his willingness to entertain settlement. (ECF No. 34.) After the parties developed competing life care plans, the case ultimately entered mediation in October of 2020. (ECF No. 69.) The parties subsequently confirmed their tentative agreement in April of 2021 and respondent filed the parties' stipulation resolving the case on August 31, 2021, which formed the basis for a decision awarding damages. (ECF Nos. 75, 80-81.) Judgement entered in September of 2021. (ECF No. 83.)

Subsequently, on March 3, 2022, petitioners filed two motions which sought a combined total of $513,730.94 in attorneys' fees and costs. In the first, petitioners requested $48,665.07 for reimbursement of attorneys' fees and costs related to the guardianship they were required to establish in order to collect the award of damages by the terms of the parties' stipulation. Specifically, they requested the following: $12,780.00 in past attorneys' fees to the guardianship attorney that represented them, $165.95 in filing costs, $23,429.94 in anticipated attorneys' fees through 2030, and $12,287.18 in guardianship costs. (ECF No. 87, p. 1.) The $12,780.00 in costs includes $11,207.00 for the premium required to secure a surety bond required under North Carolina law for the duration of the guardianship. (*Id*. at 3 (citing N.C. Gen. Stat. § 35A-123).) The anticipated guardianship attorneys' fees relate to maintaining and discharging the guardianship. (*Id*.) This includes an initial inventory report, annual accounts for every year through 2030, and a final account at the termination of the guardianship. (*Id*. at 3-4 (citing N.C. Gen. Stat. §§ 35A-1263.1; 7A-307(a)(1)(1a)(2); 35A-1266).)

Respondent filed a separate response to petitioners' motion seeking guardianship fees and costs. (ECF No. 92.) In that response, respondent agrees that the statutory requirements for an award of attorneys' fees and costs is met in this case and requests that the special master exercise his discretion to determine a reasonable award for guardianship attorneys' fees and costs. (*Id*. at 2-4.) In a footnote, respondent notes that the amount requested in this case is "higher than the amounts typically awarded for these services in Vaccine Act cases" but reiterates that he is deferring to the special master regarding the amounts at issue. (*Id*. at n. 4.) Respondent does not challenge any of petitioners' representations regarding the relevant state law nor offer any argument as to what would constitute reasonable fees and costs in the context of this case.

In their second motion, petitioners seek reimbursement of the attorneys' fees and costs incurred by counsel of record in the prosecution of this petition. (ECF No. 89.) As noted above, counsel billed $412,111.60 in attorneys' fees and had costs totaling $52,954.27. (ECF No. 89.) The costs included a total of $33,525.00 in expert costs, inclusive of both Dr. Lichtman's opinion and the work of petitioners' life care planner (ECF No. 90-6.) as well as $12,110.40 reflecting petitioners' share of the cost of the mediator they relied upon to resolve the case (ECF No. 90-7). Pursuant to General

Order Number 9, petitioners confirm that they did not personally incur any costs related to the prosecution of the case. (ECF No. 90-8.)

Respondent filed a separate response to petitioners' second motion seeking attorneys' fees and costs for their counsel of record.  (ECF No. 91.)  As in his other response, respondent agrees that the statutory requirements for an award of attorneys' fees and costs is met in this case and requests that the special master exercise his discretion to determine a reasonable award for attorneys' fees and costs.  (*Id*. at 2-4.) In a footnote, respondent again similarly notes that the amount requested in this case is "significantly higher than is typically awarded" in cases that did not involve any hearing or appeal, but reiterates that he is deferring to the special master regarding the amounts at issue. (*Id*. at n. 4.)  Respondent does not challenge any specific aspect of petitioners' request.

Petitioners filed a reply on March 21, 2022. (ECF No. 93.)  In response to respondent's suggestion that the fees in this case were unusually high, petitioners stress the complexity of the settlement that was achieved and the fact that no interim award of attorneys' fees and costs was ever made. (*Id*.)

## II. Legal Standard

Section 15(e)(1) of the Vaccine Act allows for the special master to award "reasonable attorneys' fees, and other costs."  § 300aa–15(e)(1)(A)–(B).  Petitioners are entitled to an award of reasonable attorneys' fees and costs if they are entitled to compensation under the Vaccine Act, or, even if they are unsuccessful, if the special master finds that the petition was filed in good faith and with a reasonable basis.  *Avera v. Sec'y of Health & Human Servs.*, 515 F.3d 1343, 1352 (Fed. Cir. 2008). The Federal Circuit has approved the lodestar approach to determine reasonable attorneys' fees and costs under the Vaccine Act.  *Avera*, 515 F.3d at 1347.  This is a two-step process.  *Id.* at 1347-48.  First, a court determines an "initial estimate . . . by 'multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate.'"  *Id.* (quoting *Blum v. Stenson*, 465 U.S. 886, 888 (1984)).  Second, the court may make an upward or downward departure from the initial calculation of the fee award based on specific findings.  *Avera*, 515 F.3d at 1348.

A reasonable hourly rate is "the prevailing market rate defined as the rate prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation."  *Avera*, 515 F.3d at 1348 (citation and quotation omitted).  In *Avera*, the Federal Circuit found that in Vaccine Act cases, the special master should use the rate prevailing in the forum, *i.e.*, Washington, D.C., in determining an award of attorneys' fees unless the bulk of the work is completed outside of the forum and there is a "very significant difference" between the forum hourly rate and the local hourly rate.  515 F.3d at 1349 (citing *Davis County Solid Waste Mgmt. & Energy Recovery Spec. Serv. Dist. v. U.S. Envtl. Prot. Agency,* 169 F.3d 755 (D.C. Cir. 1999)).  Petitioners have filed unchallenged and unrebutted evidence suggesting there is no significant difference between local and forum rates. (ECF No. 94-3, pp. 15.)

3

The decision in *McCulloch* provided a further framework for consideration of appropriate ranges for attorneys' fees based upon the experience of the practicing attorney. *McCulloch v. Sec'y of Health & Human Servs.*, No. 09-293V, 2015 WL 5634323, at *19 (Fed. Cl. Spec. Mstr. Sept. 1, 2015), *motions for recons. denied*, 2015 WL 6181910 (Fed. Cl. Spec. Mstr. Sept. 21, 2015). After discussing the potential approaches to setting a forum rate and reviewing cases and material from both within and without the Vaccine Program, the special master concluded that the following factors should be considered: (1) the prevailing rate for comparable legal work in Washington, DC; (2) the prevailing rate for cases in the Vaccine Program; (3) the experience of the attorney(s) in question within the Vaccine Program; (4) the overall legal experience of the attorney(s); (5) the quality of work performed by the attorney(s) in vaccine cases; and (6) the reputation of the attorney(s) in the legal community and community at large. *McCulloch,* 2015 WL 5634323, at *17. The Office of Special Masters has since updated the *McCulloch* rates, and the Attorneys' Forum Hourly Rate Fee Schedules for 2015-2016 through the current year can be accessed online.[2]

It is "well within the special master's discretion" to determine the reasonableness of fees. *Saxton v. Sec'y of Health & Human Servs.*, 3 F.3d 1517, 1521-22 (Fed. Cir. 1993); *see also Hines v. Sec'y of Health & Human Servs.*, 22 Cl. Ct. 750, 753 (1991) ("[T]he reviewing court must grant the special master wide latitude in determining the reasonableness of both attorneys' fees and costs."). Applications for attorneys' fees must include contemporaneous and specific billing records that indicate the work performed and the number of hours spent on said work. *See Savin v. Sec'y of Health & Human Servs.*, 85 Fed. Cl. 313, 316-18 (2008). Such applications, however, should not include hours that are "'excessive, redundant, or otherwise unnecessary.'" *Saxton*, 3 F.3d at 1521 (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983)). Special masters can reduce a fee request *sua sponte*, without providing petitioners notice and opportunity to respond. *See Sabella v. Sec'y of Health & Human Servs.*, 102 Fed. Cl. 719, 729 (2011). Furthermore, a special master need not engage in a line-by-line analysis of a petitioner's fee application when reducing fees. *Broekelschen v. Sec'y of Health & Human Servs.*, 102 Fed. Cl. 719, 729 (2011).

### III. Amount of the Award

#### a. Attorneys' Fees and Costs for Counsel of Record

##### i. Hourly rates

According to the timesheets accompanying petitioners' fee application, five individuals billed for work performed in this case: Counsel of record, Attorney John

---

[2] Each of the Fee Schedules can be accessed at http://www.cofc.uscourts.gov/node/2914. The hourly rates contained within the schedules are derived from the decision in *McCulloch*, 2015 WL 5634323. The schedules for successive years are adjusted for inflation using the Producer Price Index for Offices of Lawyers ("PPI-OL").

4

Allen Jones (ECF No. 90-4, pp. 1-26); Attorney H. Forest Horne (*Id.* at 27-28); Attorney Kelly E. Elder (*Id.* at 29-32); Attorney Karl J. Amelchenko (*Id.* at 33-35); and Paralegal Christi U. Wert (*Id.* at 36-83).

For Attorney Jones, who was first admitted to practice in 1982, petitioners' request the following hourly rates:

- $430 per hour for work performed in 2014, 2015, and 2016; and
- $440 per hour for work performed in 2017; and
- $445 per hour for work performed in 2018; and
- $464 per hour for work performed in 2019; and
- $484 per hour for work performed in 2020; and
- $509 per hour for work performed in 2021 and 2022.

(ECF No. 90-2, p. 7.)  Attorney Jones acknowledges that these rates reflect the maximum allowable rates under the above-referenced OSM hourly rate fee schedules.  (*Id.*)  Frustratingly, however, specific hourly rates are not proposed for any of the other individuals working on this case.  (ECF No. 90-2.)  Nor are the hourly rates included within the billing records.[3] (ECF No. 90-4.)  It appears that Attorney Horne, first admitted to practice in 1989, billed at rates of $509 and $695 per hour for 2021 and 2022 respectively,[4] Attorney Elder, first admitted to practice in 2019, billed at rates of $153 per hour for 2018 and $266 per hour for work performed in 2021 and 2022,[5] and Attorney Amelchenko, first admitted to practice in 2009, billed at rates of $400 per hour for 2015, $300 per hour for 2016, and $310 per hour for 2017.[6]  Paralegal Wert billed $145 per hour for work performed in 2014, 2015, and 2016, $148 per hour for work performed in 2017, $153 per hour for work performed in 2018, $156 per hour for work performed in 2019, $163 per hour for work performed in 2020, and $172 per hour for

---

[3] Petitioners' counsel is cautioned that petitioners bear a burden of demonstrating the reasonableness of the attorneys' fees and costs sought.  I have allowed some latitude given that this is counsel's first case in the program; however, counsel should not presume that the undersigned, or any other special master, will in the future engage in the time and effort necessary to decipher an incomplete fee application.  *See, e.g.,* notes 4-7, below.

[4] On August 2, 2021, 1.5 hours were billed that totaled $763.50, from this it can be calculated that an hourly rate of $509 per hour was used.  On February 16, 2022, .3 hours were billed totaling $208.50 (*i.e.* $69.5 per tenth of an hour), which indicates an hourly rate of $695. (ECF No. 90-4, p. 28.)

[5] On May 17, 2018, Attorney Elder billed .4 hours totaling $61.20, which indicates an hourly rate of $153 per hour. (ECF No. 90-4, p. 31.)  As of October 26, 2021, Attorney Elder billed .3 hours at $79.80, which indicates an hourly rate of $266 per hour. (*Id.*)  As of January 11, 2022, .2 hours were billed totaling $53.20, which indicates an hourly rate of $266. (*Id.*)

[6] Attorney Amelchenko billed 2 hours totaling $800 on December 11, 2015, indicating an hourly rate of $400.  (ECF No. 90-4, p. 35.)  However, that is the only entry at that rate.  Instead, the billing records reflect that for 2016, only $300 per hour was billed.  As of January 2, 2017, .2 hours were billed totaling $62.00, indicating an hourly rate of $310. (*Id.* at 34.)

5

work performed in 2021 and 2022.[7] As with the rates specifically requested for Attorney Jones, these rates generally constitute the maximum rates provided for by the hourly rate fee schedules.[8]

Importantly, however, this is counsel's first time representing a petitioner in this program. (ECF No. 90-2, p. 5.) The top rates reflected on the hourly rate schedules are reserved for attorneys with significant prior experiencing litigating cases within this program. *McCulloch*, 2015 WL 5634323, at *17 (noting that "[t]he higher end of the range should be awarded to those with significant Vaccine Program experience who perform high quality legal work in vaccine cases."); *accord Wheatley v. Sec'y of Health & Human Servs.*, No. 17-0697V, 2019 WL 4911065, at *2 (Fed. Cl. Spec. Mstr. May 17, 2019) (explaining that "Mr. Ellis' requested rates are within the correct ranges, however they are at the top of each range. Mr. Ellis lacks the experience in the Vaccine Program to support the requested rate per the OSM attorney's Form Hourly Rate Schedules.") Balancing counsel's overall legal experience versus the lack of experience specific to this program, and the good outcome achieved in the case versus the inefficiency reflected in the overall number of hours expended for a case that settled without a hearing, I conclude that a reduction to the requested rates is necessary.

Ordinarily, as part of the lodestar analysis, I would assign each attorney a reasonable hourly rate for each year and make specific reductions based on the hours billed at each rate. In this case, however, counsel has not provided the information that would facilitate this process. Instead, counsel's billing records reflect only the total number of hours billed for each individual over all years combined. In any event, as noted above, special masters are not obligated to make line-by-line cuts. Accordingly, I conclude that the following reductions are appropriate. In general, on the OSM hourly rate fee schedule there is about an 11% difference between the top and bottom rates for attorneys with 31+ years of experience, like Attorney Jones and Attorney Horne. Therefore, I find that an 8% reduction to Attorney Jones's and Attorney Horne's total billing will result in an adjustment that accords with what would otherwise be an

---

[7] On September 10, 2014, Paralegal Wert billed .3 hours totaling $43.50, indicating an hourly rate of $145. The same rate appears to have been used in 2015 and 2016. (ECF No. 90-4, p. 83.) As of January 2, 2017, .2 hours were billed totaling $29.60, indicating an hourly rate of $148. (*Id.* at 71.) As of January 5, 2018, .4 hours were billed totaling $61.20, indicating an hourly rate of $153. (*Id.* at 67.) As of January 21, 2019, .10 hours were billed at $15.60, indicating an hourly rate of $156. (*Id.* at 59.) As of January 3, 2020, .1 hours were billed at $16.30, indicating an hourly rate of $163. (*Id.* at 51.) As of January 4, 2021, .4 hours were billed at $68.80, indicating an hourly rate of $172 per hour. (*Id.* at 46.) The same rate appears to have been applied to work performed in 2022.

[8] The exceptions are as follows: Attorney Horne's $695 per hour for work performed in 2022 is substantially higher than the maximum rate of $525 for 2022, though only a *de minimis* number of hours were billed at the excessive rate. Attorney Amelchenko's hourly rate for 2015 substantially exceeds the maximum rate for the appropriate bracket based on years of experience. As with Attorney Horne, the number of hours billed at that excessive rate was minimal. When Attorney Amelchenko moved to the 8-10 years of experience category in 2017, the hourly rate was increased by only $10 per hour, leaving the resulting rate below the maximum for that category. Paralegal Wert's rate did not increase from 2021 to 2022.

appropriate hourly rate.  **This represents a reduction of $21,128.08**.[9]  For attorneys with less than four years of experience the fee schedule includes a rate differential of about 40%.  For attorneys with between 4-7 years of experience, the differential is about 29%.  For attorneys with 8-10 years of experience, the differential is about 24%.  Accordingly, I estimate that an overall 20% reduction in the billing for Attorneys Elder and Amelchenko is appropriate.  **This results in a reduction of $4,350.12**.[10]  According to the OSM fee schedule, the hourly rate for paralegals generally has about a 15% differential between the top and bottom rates.  Therefore, I find that a 10% reduction to paralegal Wert's billing is appropriate.  **This results in a reduction of $13,991.00**.[11]

**All of this results in a reduction of counsel of record's attorneys' fees from $412,111.60 to $372,642.40.**

ii.   Reasonable number of hours

Special masters may rely on their experience with the Vaccine Program to determine the reasonable number of hours expended.  *Wasson v. Sec'y of Health & Human Servs.*, 24 Cl. Ct. 482, 484 (1991), *rev'd on other grounds and aff'd in relevant part*, 988 F.2d 131 (Fed. Cir. 1993).  It is "well within the special master's discretion to reduce the hours to a number that, in his experience and judgment, [is] reasonable for the work done."  *Saxton*, 3 F.3d at 1521.  Special masters have previously reduced the fees paid to petitioners due to excessive and duplicative billing.  *See Ericzon v. Sec'y of Health & Human Servs.*, No. 10-103V, 2016 WL 447770 (Fed. Cl. Spec. Mstr. Jan. 15, 2016) (reduced overall fee award by 10 percent due to excessive and duplicative billing); *Raymo v. Sec'y of Health & Human Servs.*, No. 11-654V, 2016 WL 7212323 (Fed. Cl. Spec. Mstr. Nov. 2, 2016) (reduced overall fee award by 20 percent), *mot. for rev. denied*, 129 Fed. Cl. 691 (2016).  Petitioners' counsel "should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission."  *Hensley v. Eckhart*, 461 U.S. 424, 434 (1983).

Here, respondent suggests only vaguely that counsel's billing in this case is atypically high.  There is some merit to respondent's contention and based on my own

---

[9] Attorney Jones billed a total of $260,075.00 and Attorney Horne billed a total of $4,026.00, for a total of $264,101.00. (ECF No. 90-4, pp. 26, 28.)  Thus:  $264,101.00*0.08 = $21,128.08.

[10] Attorney Elder billed a total of $11,997.60 and Attorney Amelchecko billed $9,753.00, for a total of $21,750.60.  (ECF No. 90-4, pp. 32, 35.)  Thus:  $21,750.60*0.20 = $4,350.12.

I additionally note that Ms. Elder, unlike her colleagues, is currently undersigned counsel in a handful of ongoing Vaccine Program cases in which attorneys' fees will presumably be sought in the future. Applying a 20% reduction to Ms. Elder's requested hourly rate of $260.00 yields an hourly rate of $208.00. This is being noted largely for future reference in those cases in which other special masters will have to assess whether Ms. Elder's requested rate is reasonable for an attorney of her experience.

[11] Paralegal Wert billed a total of $139,904.60.  Thus: $139,904.60*0.10 = $13,991.00.

review of counsel's billing records, I have found two causes to implement an overall reduction to the requested fees.

First, the level of communication between counsel and petitioners is exceptionally high, to a level rarely seen in Vaccine Program cases. Petitioners contend that they "were regularly and intimately involved in the pursuit of this case, regularly providing updates on T.E.Z.'s condition for the benefit of all involved. The updates included regular phone calls, and, frequently, several email chains daily." Reply at 2. "Thus, the fees Petitioner's counsel has requested are a result and reflection of the unusual and complicated nature of the damages caused by T.E.Z.'s unusual disease." *Id.* Petitioners are correct that the instant case presents an injury more complicated than seen in most Vaccine Program cases. However, I have reviewed other similarly complicated injuries and cases and their attendant billing records and none of them had as much communication between counsel and their clients. As counsel has noted, there is some form of communication between counsel and petitioners almost every single day, which has led to what is, in my experience, an excessive number of hours billed overall in this matter. Ultimately, it is counsel's duty to manage the expectations of their client as well as to exercise reasonable billing judgment when requesting reimbursement from the Vaccine Program. *See Soos v. Sec'y of Health & Human Servs.*, No. 16-626V, 2020 WL 2487882, at *2 (Fed. Cl. Spec. Mstr. Apr. 15, 2020). Based on my review of the billing records, I find a 10% reduction is appropriate to offset this issue.

Second, in this program assigning multiple attorneys to work on a case is disfavored due to the inefficiencies created in what are not typically procedurally complex cases.  See *Sabella*, 86 Fed. Cl. at 214–15; *Austin v. Sec'y of Health & Human Servs.*, No. 10-362V, 2013 WL 659574, at *14 (Fed. Cl. Spec. Mstr. Jan. 31, 2013); *Soto v. Sec'y of Health & Human Servs.*, No. 09–897V, 2011 WL 2269423, at *6 (Fed. Cl. Spec. Mstr. June 7, 2011); *Carcamo v. Sec'y of Health & Human Servs.*, No. 97–483V, 2011 WL 2413345, at *7 (Fed. Cl. Spec. Mstr. May 20, 2011).  Moreover, special masters have historically reduced attorneys' fees due to excessive interoffice communication between attorneys and paralegals.  *Skinner-Smith v. Sec'y of Health & Human Servs.*, No. 14-1212V, 2022 WL 2452384, at *3 (Fed. Cl. Spec. Mstr. Jun 9, 2022) (noting that "[h]istorically, Special Masters have denied requests for fees related to internal communications between attorneys and paralegals at the same firm."); *Nichols v. Sec'y of Health & Human Servs.,* No. 08-654V, 2018 WL 4391064, at * 2 (Fed. Cl. Spec. Mstr. Aug. 21, 2018)(reducing fees for "excessive billing for sending and receiving emails separately."); *Tarsell v. Sec'y of Health & Human Servs.*, No. 10-251V, 2018 WL 3989452, at *3 (Fed Cl. Spec. Mstr. July 31, 2018) (explaining that "[b]illing for intra-office communication is unreasonable and excessive.")  Based on my review of the billing records in this case, I find another 10% reduction is appropriate.

**This results in a further reduction from the already reduced amount of $372,642.40 to $298,113.92.**

    iii.   <u>Counsel of record's costs</u>

Attorneys' costs must be reasonable as well. *See Perreira v. Sec'y of Health & Human Servs.*, 27 Fed. Cl. 29, 34 (1992) ("The conjunction 'and' conjoins both 'attorneys' fees' and 'other costs' and the word 'reasonable' necessarily modifies both. Not only must any request for reimbursement of attorneys' fees be reasonable, so also must any request for reimbursement of costs."). Reasonable costs include the costs of obtaining medical records and expert time incurred while working on a case. *Fester v. Sec'y of Health & Human Servs.*, No. 10-243, 2013 WL 5367670, at *16 (Fec. Cl. Spec. Mstr. Aug. 27, 2013). Reasonable expert costs are calculated using the same lodestar method as is used when calculating attorneys' fees. *Masias v. Sec'y of Health & Human Servs.*, No. 99-697V, 2009 WL 1838979, at *37 (Fed. Cl. Spec. Mstr. June 12, 2009). Petitioners request a total of $101,619.34 in attorneys' costs. Major components of this amount include work by petitioners' guardianship counsel ($48,665.07), work by petitioners' medical expert, Dr. Steven Lichtman ($19,500.00), work by a life care planner ($13,054.00), and mediation costs ($12,110.40). The remainder of the requested amount is for routine costs such as acquisition of medical records, postage, photocopies, and the Court's filing fee. Upon review, I find that some reductions are necessary.

Concerning the work of Dr. Lichtman, his invoices present a total of 32.5 hours billed at $600.00 per hour. Dr. Lichtman's hours are reasonable but the proposed hourly rate exceeds what the Vaccine Program has typically awarded medical experts. I was unable to find any prior instances of Dr. Lichtman performing expert work in the Vaccine Program which might establish a reasonable hourly rate, and petitioners have failed to provide any evidence supporting $600.00 as a reasonable rate for Dr. Lichtman or for any pediatric gastroenterologist. I have also assessed the rates of prior pediatric gastroenterologist and found a range of $400.00 to $600.00 per hour to be reasonable, depending on the year the work was performed and the particular qualifications of the doctor. *Williams v. Sec'y of Health & Human Servs.*, No. 17-255V, 2022 WL 628716, at *4-5 (Fed. Cl. Spec. Mstr. Feb. 7, 2022). While Dr. Lichtman's requested rate technically falls in that range, I note that almost all the work he performed was between 2015 and 2018, so while recent years have seen expert hourly rates exceed $500.00 per hour, the Vaccine Program virtually never reimbursed *any* expert above $500.00 for work performed during that time period. However, based on Dr. Lichtman's credentials, his submitted work product, and the increased knowledge of this case based on his role as T.E.Z.'s treating pediatric gastroenterologist, I am satisfied that his work in this case is fairly compensated at $500.00 per hour. **Application of this rate results in a reduction of $3,250.00.**

For establishment and maintenance of a guardianship, petitioners request $48,665.07 broken down as follows - $12,780.00 in past attorneys' fees, $167.95 in past attorneys' costs, $12,287.18 in petitioners' guardianship costs, and $23,429.94 in anticipated fees for maintenance of the guardianship through 2030. Respondent has not objected to any of these costs except to note that the total amount requested is higher than the amounts typically awarded for these services in Vaccine Act cases. (ECF No. 92). Upon review, I find the total amount requested to be slightly high, particularly for the

services already rendered. One special master who recently analyzed guardianship costs found fees between $5,050.00 and $8,329.05 as typical of attorney work to necessary to establish a guardianship. *Hinton v. Sec'y of Health & Human Servs.*, No. 16-1140V, 2022 WL 17829727, at *3 (Fed. Cl. Spec. Mstr. Nov. 2, 2022). These amounts are also in line with my experience as a special master in reviewing requests for guardianship counsel reimbursement.

While petitioners'' requested amount of $12,780.00 is not necessarily unreasonable on its face, a review of the billing entries submitted reveals an unreasonable amount of time spent researching the Vaccine Program corresponding with Mr. Jones and Ms. Elder on the process of obtaining reimbursement for their services. For example, 4.4 hours was billed to "review correspondence regarding attorney fee reimburse; review billing; telephone conferences with Toler Ratledge and Mr. Zug regarding same; research Vaccine Program limitations on Program liability; assist in draft of correspondence to Vaccine Program counsel" and over ten hours were billed on communication with counsel and preparation of a six-page affidavit. ECF No. 88 at Ex. 3 pg. 4-5. This is perhaps related to Mr. Jones and Ms. Elder's relative Vaccine Program inexperience that they were not able to offer clearer directives to the guardianship counsel as to what was required of them in terms of what work could be reimbursed and what information would be needed to support it. I also note that a small amount of travel time was billed at the full hourly rate rather than one half of that rate. **After careful review, I find it reasonable to reduce the requested amount of guardianship attorneys' fees by $3,000.00.**

The remainder of the requested guardianship costs are reasonable. Petitioners have provided adequate documentation to support the bond premium and the projected future fees and costs for yearly maintenance of the trust appear reasonable in my experience. *See Strickland v. Sec'y of Health & Human Servs.*, No. 18-269V, 2023 WL 2364907, at *8-9 (Fed. Cl. Spec. Mstr. Mar. 6, 2023) (guardianship attorney indicating that annual work would be approximately four to five attorney hours and three to four paralegal hours, plus court costs). At the requested rate of $300.00 per hour for attorneys and $150.00 per hour for paralegals, those numbers align with what petitioners in the instant case are requesting. **Accordingly, the amount awarded for guardianship work is reduced from the requested amount of $48,665.07 to $45,665.07.**

Finally, although special masters allow for reimbursement for copying and printing, but generally office supplies are considered unreimbursable overhead expenses. *Compare Fragoso v. Sec'y of Health & Human Servs.*, No. 08-236V, 2011 WL 300139, at *3 (Fed. Cl. Spec. Mstr. Jan. 6, 2011) (allowing reimbursement for photocopying on a per page basis) *with Whitener v. Sec'y of Health & Human Servs.,* No. 06-477V, 2011 WL 1467919, at *8 (Fed. Cl. Spec. Mstr. Mar 25, 2011) (explaining that "office supplies are overhead and are not compensable in the Program). Here, in addition to copying and printing, petitioners' counsel has billed $61.00 for *outgoing* faxes and $677.60 for scanning on a per sheet basis. However, scanning and outgoing faxes do not consume either paper or ink. Any other operating costs associated with

the use of scanners and fax machines is better characterized as unreimbursable overhead.  **Thus, petitioners' requested costs are further reduced by $738.60.**

**In sum, petitioners are awarded final attorneys' costs totaling $94,630.74.**

### IV. Conclusion

In light of all of the above, petitioners' motions at ECF No. 87 and ECF No. 89 are GRANTED and I award attorneys' fees and costs in a reduced amount.

**I award a lump sum of $392,744.66 in the form of a check payable to petitioners and their counsel, Mr. John Alan Jones, Esq.**

The clerk of the court shall enter judgment in accordance herewith.[12]

**IT IS SO ORDERED.**

**s/Daniel T. Horner**
Daniel T. Horner
Special Master

---

[12] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by the parties' joint filing of notice renouncing the right to seek review.